UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 20-cr-265 (WMW/HB) |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR *FRANKS* HEARING** |
| Erick Fontain Thomas, | |
| Defendant. | |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the court on Defendant Erick Fontain Thomas's Motion for Evidentiary Hearing in Accordance with *Franks v. Delaware* [ECF No. 33]. The Court held an initial hearing on the motion (*see* Aug. 12, 2021 Ct. Mins. [ECF No. 69]) and received supplemental briefing [ECF Nos. 79, 80] after resolving Thomas's Motion to Compel in Camera Review (Sept. 29, 2021 Ord. [ECF No. 73]). For the reasons set forth herein, the Court will deny the motion.

The instant motion relates to Thomas's pending motion to suppress evidence seized from Thomas's residence [ECF No. 23]. On August 25, 2020, Officer Caleb Tesdahl furnished the application for search warrant and supporting affidavit. He relied for key elements of the affidavit on information provided to him by Investigator S. Ryan. In the affidavit, Tesdahl averred:

- He is an officer with seven years of experience and training in the investigation of illegal controlled substances.

- A concerned citizen, whose identity was known to Ryan, told Ryan s/he saw a large amount of heroin within the last 96 hours at the place to be searched.
- Thomas resides at the place to be searched.
- The concerned citizen also told Ryan s/he saw an AR15 style rifle and two handguns at the residence within the last 24 hours.
- Thomas is prohibited from possessing a firearm because of his prior history of felony convictions.
- Approximately three weeks prior, an officer smelled the odor of marijuana coming from the place to be searched when responding to a call for service. The officer spoke with both Erick Thomas and Priscilla Caballero at the residence.
- A person described by Ryan as a CRI who was previously a suspect in an investigation into controlled substance sales of heroin and methamphetamine told Ryan that s/he had purchased heroin from Thomas in the last 3 weeks and had given Thomas a car in payment for a drug debt.
- The vehicle the CRI stated s/he gave to Thomas is currently in the garage of the place to be searched, along with a vehicle registered to Priscilla Caballero and a vehicle registered to Erick Fontain Thomas.
- Officers currently stationed outside the place to be searched can smell marijuana.

(Def.'s Ex. A [ECF No. 34-1 at 1].)  Based on the affidavit, the judge authorized the search of the residence for drugs, drug paraphernalia, and weapons.

Under *Franks*, a criminal defendant may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination.  *See* 438 U.S. 154, 155-56 (1978); *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986) (extending *Franks* to omissions).  In order to merit a *Franks* hearing, however, the defendant must make a substantial preliminary showing (1) that the affiant knowingly and intentionally, or in reckless disregard for the truth, made false statements or omitted information *and* (2) that if the false information is excised and the omitted information is included, the affidavit

2

no longer establishes probable cause. *See United States v. Conant*, 799 F.3d 1195, 1199-1200 (8th Cir. 2015) (quoting *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001).

The requirement of a substantial preliminary showing is "not lightly met." *United States v. Short*, 2 F.4th, 1076, 1080 (8th Cir. 2021). The challenger's attack must be more than conclusory; there must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. *Franks,* 438 U.S. at 171–72. It must be shown the falsehood or omission was made with "an intent to mislead the issuing judge on a material fact." *United States v. Falls*, 34 F.3d 674, 682 (8th Cir. 1994). "In determining if an affiant's statements were made with reckless disregard for the truth, the test is whether, after viewing all of the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011). Recklessness may also be inferred when material omitted would have been clearly critical to the finding of probable cause. *See United States v. Carnahan*, 684 F.3d 732, 735 (8th Cir. 2012). Where, as here, officers collaborate in an investigation, knowledge of one is presumed shared by all, and an officer cannot escape *Franks* by providing selective information to the affiant who, unknowingly, includes false information or omits material information from an affidavit in support of the warrant. *United States v. Neal*, 528 F.3d 1069, 1072-73 (8th Cir. 2008).

Thomas asserts the affiant, Tesdahl (or his source, Ryan) knowingly omitted material facts and intentionally misrepresented facts in the affidavit to bolster the credibility of the informant and concerned citizen and to establish probable cause. First, Thomas argues that the informant—whose identity is known to Thomas and was confirmed by the government—had a lengthy criminal history about which Ryan or Tesdahl must have known but did not disclose in the affidavit. Second, he contends there was no basis for the affidavit's representation that the informant was a reliable one. (Def.'s Mem. Supp. *Franks* Mot. at 4–9 [ECF No. 34]; Def.'s Exs. F–X [ECF Nos. 34-1 to 34-4].) Third, a private investigator employed by Thomas spoke with the informant on January 11, 2021, and reported that the informant told him he did not provide the information to law enforcement that was attributed to him in the search warrant application. (Def.'s Mem. Supp. *Franks* Mot. at 10; Def.'s Ex. Y; Braatz Aff. [ECF No. 40-1].) Specifically, the informant told the private investigator that he did not know anyone by the name of Erick Thomas, that he gave his car to either Priscilla Caballero or a Black male he knew only as "D" to settle a drug debt with Priscilla Caballero, and that he never provided any information that Erick Thomas was a drug dealer or acted in any way as a CRI against the man he knew as "D." (Braatz Aff. at 3.) Fourth, Thomas points to grand jury testimony by the concerned citizen that Thomas interprets as stating that the concerned citizen last saw drugs in Thomas's residence around three weeks prior to the search warrant application. He contends this contradicts the representation in the affidavit that the concerned citizen saw drugs in the residence within 96 hours prior to the

4

search warrant application. (*Compare* Def.'s Ex. A. at 2, *with* Def.'s Ex. AA at 11 [ECF No. 77].) Fifth, Thomas contends the claim in the warrant application that officers smelled marijuana outside the residence was not credible because virtually no marijuana was seized during the search. (Def.'s Suppl. Mem. at 11 [ECF No. 79].) Sixth, Thomas argued during the hearing that the affidavit failed to mention that there were additional people living in the residence besides Thomas and failed to mention that Thomas had been out of town for several days prior to the execution of the warrant.

On the other hand, Thomas does not appear to contest that 1) Thomas resided at the place to be searched, 2) the concerned citizen told Ryan s/he saw firearms in the residence within 24 hours before the search warrant application, 3) Thomas was prohibited from possessing a firearm, or 4) the car the CRI was alleged to have given Thomas was parked in the garage of the place to be searched.

Thomas argues that he has made a substantial preliminary showing that the affidavit supporting the search warrant application contained deliberate misstatements and omissions, and that if that material had been excluded from the application, there would not have been probable cause to issue the warrant. After careful consideration of each of Thomas's challenges, the Court concludes he has not made the requisite showing.

Most of the alleged misrepresentations can be dismissed because Thomas has failed to make a substantial preliminary showing either that the statements in the affidavit on those points were actually untrue or, even if so, that Tesdahl (or Ryan) knew they were untrue. For example, the Court does not find compelling the informant's statement

5

to the investigator that he never acted as an informant against "D," for several reasons. While there is no reason to doubt the investigator reported accurately his conversation with the informant, there is no sworn statement from the informant himself; to the extent the informant told a different story to an investigator working for Thomas's attorney, it does not establish that Ryan (through Tesdahl) misrepresented what the informant said to Ryan.  Furthermore, the claim that he never acted as an informant against "D" is contradicted by a recorded phone call with officers that took place on August 25, 2020—the same day the search warrant was issued.[1]  In that call, the informant denied knowing an Erick Thomas but told police he gave "D" the vehicle for a debt and that he last received drugs from "D" two or three weeks earlier.[2]  (Def.'s Suppl. Mem. at 5.)   Indeed,

---

[1] The government did not introduce the phone call or any contemporaneous report of the content of the recording into evidence but had permitted Thomas's counsel to review and take notes from the recording.  The Court will consider the contents of the call to the extent acknowledged by Defendant for purposes of this motion, but will not consider the government's summary (insofar as it is different from Defendant's) because it is contained only in the government's responsive memorandum (Gvt. Suppl. Mem. Opp. at 5-6 [ECF No. 80]) and not in any record evidence.

[2] To be clear, the Court cannot consider this call to supplement the government's showing of probable cause after-the-fact. *See Reinholz*, 245 F.3d at 775 ("In any case, retroactively supplementing the affidavit with material omissions bolstering probable cause would undermine the deterrent purpose of the exclusionary rule").  However, it may consider the contents of the call insofar as it bears on whether Tesdahl and/or Ryan misrepresented what the informant told Ryan. *See United States v. Finley*, 612 F.3d 998, 1003 n. 7 (8th Cir. 2010) ("[T]his case involves an alleged *Franks* violation—not a claim that the facts in the affidavit were insufficient to establish probable cause. Significantly, *Franks* requires an evidentiary hearing to evaluate the veracity of a warrant affidavit if a defendant makes a preliminary showing that the affidavit contains an intentional or reckless falsehood necessary to the finding of probable cause. Refusing to consider evidence from beyond the affidavit would contravene the purpose of a *Franks* hearing and run contrary to common sense.").

several months later, it appears the informant *again* gave information about "D's" drug dealings—less than a month before insisting to Thomas's private investigator that he had never done so. (Gvt.'s Ex. 1 [ECF No. 37-1].)

Similarly, the grand jury testimony from the concerned citizen that she had only seen drugs "laying out" in the residence three weeks earlier, when read in context, is ambiguous at best and not clearly at odds with the affidavit. The affidavit stated the concerned citizen told Ryan s/he saw a large amount of heroin in the residence within the preceding 96 hours.[3] (Def.'s Ex. A at 2.) The same concerned citizen later testified before a grand jury that s/he saw drugs in the residence three weeks prior to the date of the search warrant application. (Def.'s Ex. AA at 11 [ECF No. 77].) But the concerned citizen also testified to having been told by Thomas to put a large black bag, which the concerned citizen believed contained heroin because s/he knew that was what Thomas sold, into storage (*id.* at 8–9). The date of that incident was not elicited before the grand jury other than that it was prior to the date the search warrant was issued, so it could well

---

[3] At the hearing, defense counsel proffered a different argument about the concerned citizen: that the affidavit omitted information that the concerned citizen was trafficking drugs for Thomas, which could have affected the concerned citizen's reliability and motivation for providing information. But the identity of the concerned citizen was known to Ryan, suggesting reliability beyond that of an anonymous informant. *See United States v. Nolen*, 536 F.3d 834, 840 (8th Cir. 2008) (cataloguing types of informants and relative reliability of each). More importantly, that the concerned citizen was trafficking drugs for Thomas hardly undermines the probable cause for a warrant authorizing the search of Thomas's residence for drugs.

have been the more recent incident that the affidavit claims was reported by the concerned citizen to Ryan.[4]

But more important is that Thomas's argument and proffered information are devoid of evidence that Tesdahl or Ryan knowingly or recklessly disregarded the truth as to the concerned citizen in order to mislead the issuing judge. Nothing in the record suggests the concerned citizen told Tesdahl or Ryan something other than what the affidavit reported, or that Tesdahl or Ryan "entertained serious doubts as to the truth . . . of the accuracy of the information." *McIntyre*, 646 F.3d at 1114. On the contrary, the record suggests the concerned citizen may have showed Ryan additional evidence of the presence of drugs at the residence that Ryan did *not* include in the affidavit.[5] Again, the Court recognizes that when the time comes to evaluate whether law enforcement showed probable cause for the issuance of the warrant, information not included in the affidavit cannot be considered, but for the purposes of the present *Franks* analysis, the question is whether Ryan or Tesdahl knowingly misrepresented the facts or knew their informants to be unreliable. Absent such a showing, even a false statement made by an informant is not a *Franks* violation. *See Franks*, 438 U.S. at 171-72 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that

---

[4] The Court notes that although the affidavit states the concerned citizen reported seeing large amounts of heroin, the concerned citizen did not testify to the grand jury that she looked into the bag, but only that she believed it to contain heroin.

[5] During the hearing, both sides discussed a video of the drugs in Thomas's residence the concerned citizen allegedly showed to Ryan. (*See also* Def.'s Ex. AA at 11 (grand jury testimony regarding the video).) The video is not mentioned in the affidavit, however.

of the affiant, not of any nongovernmental informant."); *Herring v. United States*, 555 U.S. 135, 145 (2009) ("*Franks* concern[s] false information provided by police.). C*ompare with Reinholz*, 245 F.3d at 774 (analyzing how the affiant knew his informant did not have personal knowledge despite averring to the contrary).

Others of Thomas's arguments also fail because the information offered in support of his arguments does not tend to show the information set forth in the affidavit was false, let alone deliberately so. For example, that little marijuana was actually seized during the search does not mean officers could not smell marijuana outside the residence on the day Tesdahl applied for the warrant. There are any number of possible explanations, including that the odor emanated from consumption of marijuana that had been there. As for Thomas's argument during the hearing that the affidavit failed to mention that more than just Thomas lived in the residence, the affidavit specifically stated that Priscilla Caballero was at the residence during the service call three weeks earlier and that a vehicle she owned was observed in the driveway on the day of the search. Finally, although grand jury testimony indicates Thomas had been out of town before the execution of the warrant (Def.'s Ex. AA at 15), the Court finds unpersuasive Thomas's claim that this information would have suggested that other information in the search warrant was stale. In other words, the omission of mention of Thomas's absence—even assuming for the sake of argument that Thomas's absence was known to the affiant—does not make the other statements in the affidavit questionable or misleading, let alone deliberately so.

The Court also finds unavailing the claim that Tesdahl or Ryan knowingly misrepresented the informant as a reliable one. When an affidavit in support of a search warrant is based upon information from an informant, the informant's 'reliability, veracity, and basis of knowledge are relevant considerations—but not independent, essential elements—in finding probable cause.'" *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (quoting *Reivich*, 793 F.2d at 959). The key inquiry is whether the information is reliable. *Id.* Reliability may be established through an informant's track record or independent corroboration. *See United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). Therefore, when "an informant's information is at least partially corroborated, . . . attacks upon credibility and reliability are not crucial to the finding of probable cause." *United States v. Gladney*, 48 F.3d 309, 313 (8th Cir. 1995).

Tesdahl referred to Ryan's "confidential reliable informant," but did not further describe the basis for referring to him as such. However, documents subsequently produced by the government in response to a request from Thomas's counsel showed that the informant in fact had agreed to be a "cooperating individual" for the South East Metro Violent Crime Enforcement Team and had provided credible information to an investigator in the past. (Def.'s Suppl. Mem. at 4.)

Furthermore, the affidavit described efforts made by law enforcement to corroborate the information provided by the informant in this case. The affidavit stated the informant told Ryan about drugs purchased from Thomas and about the car the informant gave to Thomas. As in *Faulkner*, officers independently corroborated the

10

transfer of the car from the informant to Thomas—in this case by locating the vehicle at the residence where Thomas resided—suggesting the informant's information on drugs was similarly accurate. *See* 826 F.3d at 1145. The verification of the transfer itself— although minor—is indicia of the informant's reliability and accuracy. *See United States v. Ketzeback*, 358 F.3d 987, 992 (8th Cir. 2004) (holding corroboration of even innocuous facts makes it more likely an informant is telling the truth); *United States v. Weeks*, 160 F.3d 1210, 1212 (8th Cir. 1998) (corroboration of residence and felony status permitted inference uncorroborated information is also reliable). In addition, law enforcement had information from the concerned citizen corroborating the likely presence of drugs at the residence. Thus, the Court finds no substantial preliminary showing that the description of the informant as "reliable" was a misstatement, let alone a deliberate or reckless one.

Two of Thomas's arguments bear closer scrutiny, however. One is his argument that the affidavit intentionally omitted the informant's lengthy criminal history. There is no question that Tesdahl's affidavit did not include the CRI's numerous prior convictions, and that the criminal history of an informant can be relevant to whether the informant should be viewed as reliable. *See United States v. Williams*, 477 F.3d 554, 559 (8th Cir. 2007) (balancing criminal history against track-record to determine reliability). Thomas argues that even in the absence of direct evidence that Tesdahl or Ryan knew the details of that history, it would have been at least reckless disregard for the truth for them to fail to look into the criminal history of a potential informant under these circumstances. But the affidavit did contain other information from which the issuing

11

judge would understand that the CRI had a criminal history, even if not the details thereof. The affidavit stated the informant was a suspect in a previous drug investigation, and that he had bought drugs from Thomas. *See United States v. Gater*, 868 F.3d 657, 660 (8th Cir. 2017) (agreeing with the district court's observation that it is unsurprising that most confidential informants are engaged in criminal activity); *United States v. LaMaorie*, 100 F.3d 547, 555 (8th Cir. 1996) ("The judge could hardly have been under the impression that [informant] was a model citizen."). The Court therefore concludes that even assuming, for the sake of argument, that the omission was deliberate or in reckless disregard for the truth, Thomas has not made a substantial preliminary showing that the omission was intended to deceive the court, or that the presence of that information would have made a material difference in the analysis of whether the warrant was supported by probable cause.

The argument the Court finds most troubling is that the affidavit made an intentionally false statement about the informant's identification of Thomas. The government does not appear to contest that the informant never specifically identified Thomas by name. It argues, however, that the affidavit does not actually say in so many words that the informant identified Erick Thomas by name, but rather that Ryan "has a confidential reliable informant (CRI) who has purchased heroin from Erick Thomas in the last three weeks," and that "[the CRI] told Inv. Ryan that they gave the car to Thomas for a drug debt." (Def.'s Ex. A at 2.) Thus, the government argues, although the wording may have been susceptible of more than one meaning, it was intended to convey only that

12

Ryan knew the person about whom the informant was speaking was Thomas, even if the informant did not know it himself.

In this respect, the Court finds the government's argument, at best, disingenuous. The most obvious and reasonable interpretation of the words in the affidavit is that the informant explicitly attributed the actions to Thomas, not that he attributed the actions to "D" but that Ryan concluded through a process of further investigation and inference that "D" must be Thomas. Therefore, the Court finds that the affidavit either misrepresented the informant's statements or omitted additional information necessary to a clear understanding of what the informant actually said.

But the government argues that even if there was a misrepresentation, it was not deliberate or misleading because nothing, including the investigator's report of his conversation with the informant, tends to prove that the "D" to whom the informant referred was *not* Erick Thomas, only that the informant did not know "D" by any name other than "D." Thus, the government contends, if the affidavit erroneously suggested the informant identified Thomas by name and failed to make clear that he only provided information about someone he knew as "D," (1) it was not a deliberate misrepresentation because Ryan had determined based on his investigation that "D" was Thomas, and so there is no basis to conclude he intended to deceive the issuing judge, and (2) even if the affidavit had stated explicitly that the informant only referred to "D" and not to Thomas by name, the affidavit would still have established probable cause for the issuance of the search warrant.

13

After careful review of the record, the Court agrees with the government that Thomas has not made a substantial preliminary showing that Ryan or Tesdahl knowingly and intentionally, or in reckless disregard for the truth, made false statements or omitted information for the purpose of deceiving the issuing judge. The record reflects that Ryan firmly believed "D" was Thomas. A supplemental report prepared by Ryan on August 25, 2020, shortly after the execution of the search warrant, recounts Ryan's investigation leading up to and during the issuance and execution of the search warrant. (Def.'s Ex. Z [ECF No. 34-4 at 18].) It describes Ryan's tracking of the informant's vehicle to the residence that ultimately became the subject of the search warrant. (*Id.*) It states that the vehicle had been at that residence for several weeks as of the date the warrant was issued, and that the informant told Ryan he had given it to "D" for a drug debt. (*Id.*) The supplemental report further states the informant had given Ryan a telephone number for "D." (*Id.*) The supplemental report goes on to recount Ryan's conversation with the concerned citizen the day of the search warrant application, stating that the concerned citizen contacted Ryan and provided the information set forth in the affidavit, identifying Thomas by name and stating that he lived at the address on the warrant. (*Id.*) But in addition, the supplemental report states that the concerned citizen provided a telephone number for Thomas, which was the same telephone number the informant had previously given as "D's" number. (*Id.*)

Based on this information, the Court concludes that although the choice of language was misleading, there is nothing to suggest it was anything other than the result

of negligent drafting, rather than the result of "an intent to mislead the issuing judge on a material fact." *Falls*, 34 F.3d at 682.

In short, although Tesdahl and Ryan doubtless could have drafted the affidavit more clearly and could have provided additional information, Thomas has not made the substantial showing that either of them intentionally or recklessly misstated or omitted information to mislead the issuing judge into issuing a warrant that otherwise would have lacked probable cause. Therefore, he is not entitled to a *Franks* hearing.

Because the suppression issue remains outstanding, the Court will reserve ruling on the question of whether the affidavit, as presented, sets forth probable cause to support the issuance of the warrant, until after a hearing and opportunity for full briefing on that motion.

Accordingly, **IT IS HEREBY ORDERED** that

1. Defendant's Motion for Evidentiary Hearing in Accordance with *Franks v. Delaware* [ECF No. 33] is **DENIED**.

2. The undersigned will continue the hearing on Defendant's Motion to Suppress Evidence [ECF No. 23] at a time and place to be determined after consultation with counsel.

Dated: December 14, 2021   *s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge