## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                              Case No. 20-cr-265 (WMW/HB)

                Plaintiff,

                                             **REPORT AND**

v.                                                     **RECOMMENDATION**

Erick Fontain Thomas,

                Defendant.

HILDY BOWBEER, United States Magistrate Judge

      This matter is before the court on Defendant Erick Fontain Thomas's Motion to Suppress [ECF No. 23]. The motion was referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The Court previously denied Thomas's Motion to Compel In Camera Review (Sept. 29, 2021 Ord. [ECF No. 73]) and Motion for Evidentiary Hearing in Accordance with *Franks v. Delaware* (Dec. 14, 2021 Ord. [ECF No. 81]), *aff'd*, (Feb. 9, 2022 Ord. [ECF No. 89]). The Court heard oral argument on the motion to suppress (Mar. 7, 2022 Ct. Mins [ECF No. 92]) and declined supplemental briefing in light of counsel's agreement (with which the Court concurs) that briefing on the prior two motions sufficiently addressed the issues. For the reasons set forth herein, the Court respectfully recommends that the motion to suppress be denied.

I.    **Facts Supporting the Warrant**

On August 25, 2020, Officer Caleb Tesdahl, a licensed police officer assigned to the Criminal Interdiction Unit of the Rochester Police Department, filed an application for search warrant with a supporting affidavit. (Warrant [ECF No. 47-1].) Tesdahl sought to search a residence in Rochester, Minnesota for controlled substances, firearms, and related paraphernalia. (*Id.* at 1.) The information supporting the warrant came from Officer J. Bradley and Investigator S. Ryan, who in turn relied upon a concerned citizen and an informant.

On August 7, 2020, Rochester Police Officer J. Bradley responded to a call for service at the residence and spoke with both Thomas and a woman named Priscilla Maria Caballero. (*Id.* at 2.) During the call for service, Bradley smelled the odor of marijuana coming from the residence. (*Id.*)

On August 25, 2020, Ryan informed Tesdahl that he had met with a concerned citizen, whose identity was known to Ryan and who told Ryan that s/he saw a large amount of heroin in the residence within the last 96 hours. (*Id.*) The same concerned citizen saw one AR15 style rifle and two handguns in the residence within the last 24 hours. (*Id.*) The concerned citizen also said that Thomas lived at the residence. (*Id.*) Tesdahl's review of Thomas's criminal history revealed Thomas was prohibited from possessing a firearm. (*Id.*)

The affidavit also states that Ryan had conducted an investigation into controlled substances sales of heroin and methamphetamine, and that the suspect of that

2

investigation "has now become a [confidential reliable informant (CRI)]."  The CRI told Ryan that he had purchased heroin from Thomas in the past three weeks and that he had given a car to Thomas for a drug debt.  (*Id.*)

At the time of the application, officers with the Rochester Police Department were surrounding the residence.  (*Id.* at 3.)  The officers reported seeing in the driveway of the residence a 1988 Chevrolet Monte Carlo registered to Thomas and a 2006 Jeep Cherokee registered to Caballero, and they saw the vehicle reportedly given to Thomas by the informant parked in the garage.  (*Id.* at 2.)  The affidavit further stated that "[f]rom the outside of the residence, officers could smell marijuana." (*Id.* at 3.)

On this information, the judge authorized the search of the residence as requested. (*Id.* at 4-5.)

## II.    Analysis

Thomas seeks to suppress the fruits of the search authorized by the warrant.  He argues that the warrant application lacks probable cause because 1) the sources of the information are unreliable and 2) even if they are reliable, the totality of the circumstances does not support probable cause.  Finally, Thomas argues the *Leon* good-faith exception to the exclusionary rule should not apply here.

### A.    Standard of Review

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  A warrant is supported by probable cause if the totality of the circumstances demonstrates "a fair probability that contraband or evidence of a crime will be found in the place to be searched."  *United States v. Seidel*, 677 F.3d 334, 337 (8th Cir. 2012) (quotation omitted); *see Illinois v. Gates*, 462 U.S. 213, 230 (1983).  "Probable cause does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime. *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007).  "The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit," *Seidel*, 677 F.3d at 337, rather than a hyper-technical one, *United States v. Caswell*, 436, F.3d 894, 897 (8th Cir. 2006).  Factors to consider in determining whether a warrant application sufficiently links the items to be seized with the place to be searched include "the nature of the crime and the reasonable, logical likelihood of finding useful evidence."  *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017).

Where the issuing judge relied solely upon a supporting affidavit to issue the search warrant, the reviewing court may consider only the information that is found within the "four corners" of the affidavit to determine the existence of probable cause. *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999).  In reviewing a warrant

after the fact, "great deference" is to be accorded the issuing judge's determination of probable cause. *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008). "On a motion to suppress, a district court should not make a de novo determination of probable cause; rather, the decision to issue the warrant is to be upheld if supported by substantial evidence in the record." *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986).

In cases where the affidavit is based substantially on information provided by an informant, "evidence of the informant's reliability, veracity, and basis of knowledge is highly relevant to the probable cause determination." *United States v. Ketzeback*, 358 F.3d 987, 991 (8th Cir. 2004). Informants may be reliable because of a track record of providing reliable information or because their information is independently corroborated by other evidence. *United States v. Knutson*, 967 F.3d 754, 758–59 (8th Cir. 2020). But an officer's bald assertion about the reliability of an informant is inadequate to establish the existence of probable cause. *Gates*, 462 U.S. at 239.

But even if the reviewing court finds a warrant lacked probable cause, the inquiry does not end there. The evidence need not be suppressed so long as the officer's reliance on it was objectively reasonable. This is known as the *Leon* good-faith exception to the exclusionary rule, based on the decision of the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 923 (1984). "Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). A

court considers the objective question of "whether a reasonably well trained officer

would have known that the search was illegal despite the issuing judge's authorization."

*Id.* (cleaned up).

> [A]n officer's reliance on a warrant would be unreasonable: (1)
> when the affidavit or testimony supporting the warrant
> contained a false statement made knowingly and intentionally
> or with reckless disregard for its truth, thus misleading the
> issuing judge; (2) when the issuing judge "wholly abandoned
> his judicial role" in issuing the warrant; (3) when the affidavit
> in support of the warrant is "so lacking in indicia of probable
> cause as to render official belief in its existence *entirely
> unreasonable*"; and (4) when the warrant is "so facially
> deficient" that no police officer could reasonably presume the
> warrant to be valid.

*Id.* at 431 (*quoting Leon*, 468 U.S. at 923 (1984)).

### B.    Whether the Information Provided by the Informants was Reliable

In this case, the application for the search warrant relied heavily on information

provided by the concerned citizen and the informant, and the Court will address each

source.  Turning first to the concerned citizen, courts have routinely recognized that a

citizen informant ordinarily has no reason to exaggerate or falsify the information s/he

gives to law enforcement, particularly when s/he is known to the officer and may be held

accountable for any inaccuracies.  *See United States v. Ross*, 713 F.2d 389, 393 (8th Cir.

1983); *Knutson*, 967 F.3d at 758; *see also Florida v. J.L.*, 529 U.S. 266, 270 (2000).  A

concerned citizen's first-hand information is ordinarily presumed credible.  *United States

v. Huntington*, Case No. 20-cv-145 (ECT/BRT), 2021 WL 165112, at *2 (D. Minn. Jan.

19, 2021) (citing 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth*

*Amendment* § 3.4(a) (6th ed. Sept. 2020 update). Here, the affidavit states the concerned citizen had been inside the residence and reported to the officer that s/he personally saw heroin and firearms. S/he also stated that Thomas lived at the residence. Moreover, the vehicles parked in the driveway and Bradley's prior visit to the residence, during which he encountered Thomas, tended to corroborate the concerned citizen's statement that Thomas lived there. Corroboration of even innocuous details suggests the information provided by the concerned citizen was reliable. *Ketzeback*, 358 F.3d at 992; *United States v. Weeks*, 160 F.3d 1210, 1212 (8th Cir. 1998).

Similarly, the issuing judge could rely on the information provided by the informant. True, Ryan's designation of his informant as "reliable," standing alone, would be insufficient to establish reliability. *Gates*, 462 U.S. at 239. But while the warrant application contains no information about the informant's track record, information from the informant was at least partially corroborated. Ryan independently substantiated the informant's claim of giving a vehicle to Thomas by locating the vehicle at the residence where Thomas was reported to be living. The informant's claims about purchasing heroin from Thomas and giving the car to Thomas for a drug debt are consistent with the concerned citizen's first-hand account of heroin in the residence and Thomas's criminal history. *See Knutson*, 967 F.3d at 759 (two informants without track records may corroborate information provided by one another); *see also United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996) (statements against penal interest naturally carry considerable weight); *United States v. Ryan*, 293 F.3d 1059, 1062 (8th Cir. 2002)

(quoting *United States v. Sumpter*, 669 F.2d 1215, 1222 (8th Cir. 1982) for the

proposition that the defendant's own "prior criminal activities and record have a bearing

on the probable cause determination").

The Court therefore concludes that the information provided by both the

concerned citizen and the informant could properly be considered reliable.

### C.    Whether Information in the Warrant Application Established Probable Cause

Thomas argues that even if the Court considers all the information in the affidavit,

including that provided by the informant and concerned citizen, the totality of the

circumstances does not establish probable cause to search the residence.  First, although

Thomas concedes that he is a person prohibited from possessing firearms, he contends the

affidavit did not establish that he was living at the residence at the time of the application,

and therefore nothing in the application suggests *he* possessed the firearms seen by the

concerned citizen. (Def.'s Mem. Supp. *Franks* Hearing at 17 [ECF No. 34].)  Because the

application does not establish illegal possession of the firearms by Thomas, he argues, the

mere presence of firearms at the residence does not establish probable cause to search the

residence for evidence of that crime.

Contrary to Thomas's protestations, the information in the warrant application did

establish probable cause that Thomas lived at the residence.  First, the concerned citizen,

who had been inside the residence, stated Thomas currently lived there.  Second, Thomas

was seen at the residence by Officer Bradley eighteen days prior to the application.

Third, a vehicle registered to Thomas was parked in the driveway of the residence and a

8

second vehicle reportedly given to Thomas by the informant was in the garage on the date of the application. Although the officers could have used additional investigatory techniques such as a trash pull to bolster the warrant application, officers need only include information "*adequate to support*" probable cause. *United States v. Ellison*, 793 F.2d 942, 947 (8th Cir. 1986). Here, the facts that were proffered in support of the application show a fair probability that Thomas lived at the residence where firearms were also present. The application did not need to include information sufficient to conclude it was more likely than not that Thomas possessed firearms illegally. *See Donnelly*, 475 F.3d at 954. Given that reliable sources stated Thomas lived at the residence and firearms were present therein, the issuing judge had a substantial basis to conclude probable cause existed to search the residence for evidence of a crime. *See United States v. Roberts*, 975 F.3d 709, 715 (8th Cir. 2020) (acknowledging that most people keep firearms on their person or in their home) (citing *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975).

Turning to the drugs, Thomas argues there was no reason to believe heroin would be found in the residence at the time the application was made because the concerned citizen only said s/he saw heroin 96 hours earlier but did not say s/he saw the heroin again 72 hours later (i.e., 24 hours before the application) when s/he says s/he saw the firearms. Thomas argues that means the heroin was no longer present at the residence,[1]

---

[1] Notably, Thomas's motion doesn't argue the 96-hour timeframe in and of itself shows the information was stale, but rather that the subsequent report affirmatively shows the heroin was no longer there. *Compare with United States v. Kennedy*, 427 F.3d 1136, 1142

and that no other information in the affidavit places heroin in the residence at any time,

let alone at the time of the application.  The informant did not report purchasing heroin at

the residence, and the affidavit contained no allegations describing reports by others or

other indicia of trafficking from the residence. (Def.'s Mem. Supp. Suppress at 3 [ECF

No. 24]); (Def.'s Mem. Supp. *Franks* Hearing at 14, 17).  Finally, Thomas argues the

smell of marijuana reported by officers on the day of the warrant application could have

come from any number of sources in a residential neighborhood, and the affidavit did not

say that the officers described the odor as emanating from the residence.

But at least with regard to the observation of heroin at the residence, Thomas's

arguments invite the Court to read the warrant application in a begrudging and hyper-

technical fashion.  *Caswell*, 436 F.3d at 897.  Read in a common-sense way, the facts

provide a substantial basis for the issuing judge to conclude that drugs and drug

paraphernalia would likely be found within the residence.  The Concerned Citizen

personally saw a large amount of heroin in the residence within 96 hours of the

application.  Although the Concerned Citizen did not *mention* seeing the heroin when

visiting the residence approximately 72 hours later, that does not mean the heroin had

been moved out of the residence, or even that s/he had looked for it and could not find it.

On the other hand, the Court is inclined to agree with Thomas that a vague report

by officers that they could smell marijuana while they were surrounding the residence

---

(8th Cir. 2005) (holding that "information of an unknown and undetermined vintage
relaying the location of mobile, easily concealed, readily consumable, and highly
incriminating narcotics could quickly go stale").

does not contribute to a showing of probable cause that illegal drugs would be found inside the residence. The affidavit does not state that the report described the odor as coming *from* the residence, nor are any other facts supplied that would allow a judge to draw that inference. While the affidavit was not required to eliminate other possible sources, more would have been required than the statement that officers could smell marijuana as they were surrounding a home in a residential neighborhood. *Compare with United States v. Turner*, 431 F.3d 332, 337 (8th Cir. 2005) (where the arresting officer "smelled an intense odor of marijuana emanating from Turner during his encounter with him at the bar," it supported probable cause even though other sources of the smell may have existed).

But this additional flourish was not necessary to the finding of probable cause. The Court finds that the totality of the other circumstances presented in the warrant establish probable cause that contraband would be found within the residence.

### D.    Whether the Good Faith Exception to the Exclusionary Rule Applies

Because the Court concludes that probable cause supported the warrant, it need not reach the question of whether the good-faith exception to the exclusionary rule would apply. But the Court finds that even if the warrant lacked probable cause, none of the concerns that could suggest it was objectively unreasonable for a well-trained officer to rely on the warrant is present here. The Court has already concluded that there was not a substantial preliminary showing that any statements in the applications were false or that there were deliberate material omissions. (Dec. 14, 2021 Ord.), *aff'd*, (Feb. 9, 2022

11

Ord.).  Furthermore, Thomas has offered no basis to conclude that the issuing judge abandoned his judicial role, that the warrant so lacks indicia of probable cause that official reliance on it was unreasonable, or that the warrant was so facially deficient that no reasonable officer could rely on it.  *See Proell*, 485 F.3d at 431.

## III.    Recommendation

Based on all the files, records, and proceedings herein, the Court respectfully recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [ECF No. 23] be **DENIED.**

Dated: March 11, 2022

*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).